PENN YAN MARINA, INC., Plaintiff, *v.* VILLAGE OF PENN YAN, Defendant.

County Court, Yates County, August 22, 1966.

*Taylor & Taylor* (*Daniel R. Taylor* of counsel), for plaintiff.
*Bond, McDonald & Toole* (*William J. McDonald* of counsel), for
defendant.

LYMAN H. SMITH, J. The issues in this action having regularly
come on for trial before the County Court of the County of Yates
held in and for the County of Yates at the Courthouse in Penn
Yan, New York, on the 23d day of June, 1966 and the parties
having stipulated trial without jury and the court having heard
the allegations and proofs of the parties hereto, and due
deliberation having been had thereon,

Now, after hearing Daniel R. Taylor, Esq., attorney for the
plaintiff, and William J. McDonald, Esq., attorney for the
defendant, I do hereby decide and find the essential facts, which
I deem established by the evidence and conclude as a matter of
law, as follows:

On and before February 25, 1965 plaintiff corporation was
the owner of a certain boathouse and boat slips situate on the
southerly edge of Keuka Lake Outlet within the village limits
of the Village of Penn Yan, Yates County, New York.

On or about February 25, 1965 the defendant village, acting
through its Superintendent of Public Works, entered and
demolished the plaintiff's boathouse and slips by pulling down
and burning the same.

This is an action in tort and arises from the foregoing undis-
puted facts. The plaintiff claims damages for the demolition
of the boathouse and slips. This court finds as a matter of fact
and law the act of demolition on the part of defendant village
was negligent.

While the defendant village inferentially raised the defense of
title to the underlying fee by alluding to the plaintiff as a
" squatter ", in an apparent effort to justify its acts, no proof
of title was offered in this proceeding. In passing, it should be
noted that some years ago an action in ejectment, brought by
the defendant village, had been dismissed without prejudice by
this court. Further, the defendant village did not dispute plain-
tiff's ownership of the structure as personal property. This
court, therefore, does not pass on the question of title to the
underlying fee, other than to note the proof revealed open and
notorious use and possession by the plaintiff and its predecessors
for many years which might raise in a proper proceeding the
possibility of title through adverse possession.

The prime question in this lawsuit centered upon measuring
the damages.

Since the acts of the defendant village amounted to a *de facto* appropriation, damages should be measured in the same way as any partial appropriation by the sovereign — the accepted rule being the difference between the *before* and *after* values.

While the defendant village offered no proof of the value of the property *before* and *after* the demolition of the structure it did, however, narrow the traditional analyses (i.e., cost, income and market data) by limiting the plaintiff's proof to the " income approach ".

Concededly, the highest and best use of the property was for rental boat storage. Therefore, the best support for the expert's opinion of fair market value of the property was the income approach, although the record reveals plaintiff's expert gave consideration to the three traditional approaches. In any event, and as pointed out by plaintiff's expert in his testimony, such evaluation " in this particular instance could almost be synonymous " regardless of the approach. This being due, of course, to the specialized use of the property.

It was undisputed that the plaintiff corporation at the time of demolition (taking) and for many years previously had enjoyed from the use of the boathouse and slips a gross annual rental income (or equivalent) of $690. Based upon an economic life of 20 years, (5% per annum) a legal return on invested capital (6% per annum) and after deducting an estimated vacancy and credit loss (10% per annum) together with annual operating expenses of $190 including an allowance for taxes (although the sovereign village had imposed none), and taking into consideration capital requirements of underlying rights and land of $90 per annum, the net income remaining to the structure was $340 per annum. This net sum allocated to the structure, capitalized at 11% (6% to capital investment, 5% to recapture of capital on the diminishing structure), is equal to $3,090.

It is clear from the record the plaintiff's expert took into consideration the value of the whole property (*before* demolition) at $4,590 " of which $3,090 is the contributing value of the ' improvement ' ". Thus, the value *after* demolition is fixed in the value assigned to the remaining value of land and riparian rights ($1,500).

The property owner is entitled to just compensation. The just compensation in the instant case is the difference in fair market value *before* and *after* the occurrence, to wit, $3,090, which said sum is hereby awarded to the plaintiff corporation, together with the costs of this action.